# Dorilus Morrison

## *vs.*

# R. J. Mendenhall.

On the 3d day of June, 1857, Jacob K. Sidle, Peter Wolford and James N. Blair, entered into an agreement under seal containing, among other things, the following provisions, viz.: "the said parties have this day agreed to enter into partnership to engage in the following business, namely; to let or loan money; buy and sell real estate; enter and locate lands, &c. and do business under the name and style of Sidle, Wolford & Co. * * The business of the company or co-partnership to be transacted in the western territories or states, and by the said J. K. Sidle, for which services he shall receive at the rate of fifty dollars per month, " &c.

On November 1st, 1858, Charles Hoag and wife, as parties of the first part, executed a mortgage of real estate to parties of the second part, described in said mortgage as Jacob K. Sidle, Peter Wolford and James N. Blair doing business under the firm name of "Sidle, Wolford & Co. * * of the second part." The mortgage was executed to secure two notes, which are referred to in the mortgage as follows: "Provided * * that if the said Charles Hoag * * shall well and truly pay * * to the said Jacob K. Sidle, Peter Wolford and James N. Blair, parties of the second part, their heirs, executors, administrators or assigns, the sum of one thousand five hundred and sixty dollars * * according to the conditions of two certain promissory notes * * * made by the said Charles Hoag, and delivered to the said parties of the second part," &c. The mortgage was duly recorded.

On May 18th, 1859, an instrument was executed of which the important portions are as follows: "Know all men by these presents, that Jacob K. Sidle and Peter Wolford, for themselves, and James N. Blair, (by his attorney in fact, the said Jacob K. Sidle) doing business under the firm of Sidle, Wolford & Co., mortgagees named in " the mortgage aforesaid,

Morrison v. Mendenhall.

" for and in consideration of the sum of fourteen hundred and one dol-
lars * * paid by Edward Lewis * * the receipt whereof at the date here-
of is hereby acknowledged, have bargained, sold, transferred and assign-
ed, and by these presents do bargain, sell, transfer and assign unto said
Edward Lewis, his heirs and assigns, the said mortgage with the prom-
issory notes accompanying the same, and all right, title and interest
therein, and to the premises mortgaged, and to all moneys due or to
become due thereon.   Witness our hands and seals * *

Witnesses * *                          . J. K. SIDLE,          [Seal.]
                                       PETER WOLFORD,     [Seal.]
                                       J. N. BLAIR, by        [Seal.]
                                       J. K. SIDLE, Atty in fact." '

This was acknowledged by Wolford and Sidle, each for himself, and by
Sidle as attorney in fact for Blair, and was duly recorded May 23d, 1859.
In December 1860, Lewis, claiming to be assignee of the mortgage under
the foregoing instrument, foreclosed by advertisement.  *Held*, that under
Sec. 2. ch. 75 Pub. St. (the law then in force) it was necessary that an
assignment should for the purposes of such foreclosure be in writing.

*Held* further, that under the facts appearing in this case the mortgage
aforesaid, and the notes accompanying it, were partnership property of
the firm of Sidle, Wolford & Co.

*Held* further, that at law it is necessary that the assignment of a mort-
gage be under seal.

*Held* further, that under the provisions of the foregoing articles of
partnership, authority was conferred upon Sidle to execute the foregoing
assignment in the manner in which the same is executed, and that such
instrument was a written and sealed assignment of the mortgage, and
operated to transfer a complete title to the same to Lewis, the assignee
aforesaid. · *Held* further, that it was not necessary to the validity of the
foreclosure, that the authority to execute such assignment be recorded.

Facts going to show a ratification of said assignment by Blair con-
sidered.

The plaintiff, claiming to be the owner, and being in pos-
session of certain lots in the city of Minneapolis, brought
this action in the district court for Hennepin county, under
section 1, chapter 75, General Statutes, to determine the ad-
verse claim of the defendant.   The defendant claimed through
a deed from Charles Hoag ; the plaintiff through a mortgage

executed by said Hoag prior to defendant's deed, to Sidle, Wolford & Co., and by them assigned to one Edward Lewis, who foreclosed by advertisement. Plaintiff's title is derived by deed from the purchaser at the foreclosure sale, through intermediate parties. The objection to plaintiff's title urged by defendant is, that the assignment of the mortgage by Sidle, Wolford & Co., to Lewis was defective, and not sufficient to authorize the foreclosure. The cause was tried before the court without a jury, who ordered judgment for plaintiff. The defendant appeals to this court. The evidence and the findings of the court below, so far as material, are stated in the opinion.

LOCHREN & McNAIR, for Appellant.

CORNELL & BRADLEY, for Respondent.

*By the Court.*—BERRY, J.—On the 3d day of June, 1857, Jacob K. Sidle, Peter Wolford and James N. Blair, entered into an agreement under seal, containing, among others, the following provisions, viz. : "The said parties have this day agreed to enter into partnership to engage in the following business, namely, to let or loan moneys, buy and sell real estate, enter and locate lands, &c., and do business under the name and style of Sidle, Wolford & Co. The capital now amounts to six thousand three hundred dollars, and was paid in as follows, viz.: by Sidle $1,100, by Wolford $2,900, and by Blair $2,300, with the understanding that the capital may be increased to any amount agreed upon by the parties ; each of said parties to be entitled to the profits made in proportion to the amount of capital paid, and all losses sustained to be borne in the same proportion. The business of the company or co-partnership, to be transacted in the western territories

or states, and by the said J. K. Sidle, for which services he shall receive at the rate of fifty dollars per month, together with boarding and washing, which shall be paid by the parties in proportion to the amount of capital paid, as well as all other expenses necessary to conduct said business." On the first day of November, 1858, Charles Hoag and his wife, as parties of the first part, executed a mortgage of real estate to parties of the second part, described in said mortgage as Jacob K. Sidle, Peter Wolford, and James N. Blair, doing business under the firm name of " Sidle, Wolford & Co., * * of the second part." The mortgage was executed to secure two notes, which are referred to in the mortgage as follows: " Provided, nevertheless, that if the said Charles Hoag, one of the said parties of the first part * * * shall, well and truly pay, or cause to be paid, to the said Jacob K. Sidle, Peter Wolford, and James N. Blair, parties of the second part, their heirs, executors, administrators or assigns, the sum of one thousand five hundred and sixty dollars * * * according to the conditions of two certain promissory notes * * * made by the said Charles Hoag, and delivered to the said parties of the second part, * * which said notes, respectively, are bearing even date herewith," &c. Said mortgage was duly recorded. On the 18th day of May, 1859, an instrument was executed in the words and figures following, viz.:

" Know all men by these presents, that Jacob K. Sidle and Peter Wolford, for themselves, and James N. Blair (by his attorney in fact, the said Jacob K. Sidle,) doing business under the firm of Sidle, Wolford & Co., mortgagees, named in " the mortgage aforesaid " for and in consideration of the sum of fourteen hundred and one dollars well and truly paid to them by Edward Lewis, * * the receipt whereof at the date hereof is hereby acknowledged, have bargained, sold, transferred and assigned, and by these presents do bargain,

sell, transfer and assign unto said Edward Lewis, his heirs and assigns, the said mortgage with the promissory notes accompanying the same, and all right, title and interest therein, and to the premises mortgaged, and to all moneys due or to become due thereon.   Witness our hands and seals the eighteenth day of May, 1859.

| Witnesses : | | |
|---|---|---|
| W. M. | J. K. SIDLE, | [Seal.] |
| J. W. | PETER WOLFORD, | [Seal.] |
| | J. N. BLAIR, by | [Seal.] |
| | J. K. SIDLE, his atty. in fact." | |

This instrument was acknowledged by Wolford and Sidle, each for himself, and by Sidle as attorney in fact for Blair, and was duly recorded May 23d, 1859.   In December, 1860, Lewis, claiming to be assignee of the mortgage by virtue of the foregoing instrument, foreclosed by advertisement.   Our statute then provided, that to entitle any party to foreclose a mortgage by advertisement, it shall, among other things, " be requisite     *     *     that the mortgage     *     *     has been duly recorded, and if it shall have been assigned, that all the assignments thereof shall have been recorded."   *Pub. Stat.*, *ch.* 75, *sec.* 2.   The manifest purpose of this requirement of the statute was to make the contents of the mortgage, and, as far as the statute goes, to make the title to the mortgage matter of record.   This mode of foreclosure being altogether *in pais*, and having been devised (as it undoubtedly was) to avoid the delay and expense of judicial proceedings, it was for obvious reasons important, not only to the parties to the mortgage itself, and to the assignee, but to subsequent incumbrancers, creditors, and contemplating purchasers, that some permanent and accessible evidence of the existence and contents of the mortgage, and of the title to the same, should be provided.

This is unquestionably what was sought to be accomplished,

Morrison v. Mendenhall.

in a suitable, simple and convenient way, when the statute required the mortgage, and all assignments thereof to be recorded; and as it is for such purposes made necessary that all assignments shall be recorded, it follows that they must be so made that they can be recorded, that is to say, they must be in writing. A mere equitable or parol assignment would not answer.

But the statute has required nothing more to be recorded to authorize a foreclosure. In other words, it has expressly authorized foreclosure, if the mortgage and the assignments are recorded. Whether the spirit of this legislation would not have demanded that the authority under which the mortgage was executed, in case it was executed by attorney, as well as the authority under which an assignment was executed in a like case, should also have been spread upon the record, is an inquiry which readily suggests itself, not however as calling for a remedy at the hands of this court, but as proper to be addressed to the legislature. It is for us to say, only, that this mode of foreclosure, being a pure creature of the statute, it is sufficient to comply with the statute.

Whatever then the spirit of the legislation upon this subject might require in order that the apparent object of the legislature might be fully secured, it will not be inconsistent with the position taken, that the assignment must be recorded, and therefore written, to hold, as we shall presently come to do, that the authority to make the assignment need not be recorded.

The plaintiff in this case claims to have derived a good title to the mortgaged premises through the foreclosure sale made by Lewis as assignee aforesaid. And as there was no written assignment of the mortgage to Lewis, unless the instrument above recited be such, an important question in this case is, Was that instrument a written assignment of the mortgage?

We are of opinion that this question is to be answered in the affirmative.

The line of reasoning by which we arrive at this result leads us to consider first the articles of partnership. From the extract heretofore made from the same, it appears that Sidle, Wolford and Blair formed a partnership " to engage in the following business, namely : to let or loan money; buy and sell real estate ; enter and locate lands," &c. Loans of money being thus expressly authorized by the partnership agreement, it would follow by reasonable and natural implication, that such loans might properly be made in the usual way of doing such business; that they might be evidenced as such transactions usually are evidenced, as, for example, by the promissory note of the borrower ; and that they might properly be made upon such security as customary and prudent modes of doing business of the kind required, as, for instance, the loan might be secured by sureties; by a deposit of collaterals, or, as was done in this case, by a mortgage of real estate.

It being competent, then, for the firm in this case to take a mortgage of real estate in security of a loan of money, the next inquiry is, Was the taking of this mortgage a partnership transaction ? The mortgage runs to " Jacob K. Sidle, Peter Wolford and James N. Blair, doing business under the firm name of Sidle, Wolford & Co. of the second part."

Defendant's counsel contends that the words " doing business under the firm name of Sidle, Wolford & Co." are merely *descriptio personarum*, and that, therefore, the mortgage belonged not to the firm of Sidle, Wolford & Co., but to the persons named, as *individuals*, jointly. Upon the language of the mortgage alone, we may assume that this is *prima facie* true. *Bingham vs. Stewart, 13 Minn. 106 ; The Bk. of Genesee vs. The Patchin Bank, 13 N. Y. 309.* Yet if it be *prima facie* true, there is no rule of law which makes it conclusively and

indisputably true.   If it was the intention to make the mortgage to the firm, and take it for the firm, so that it would be the property of the firm, it would be proper that it should run to the individuals composing the firm as mortgagees.

A conveyance of real estate, or of an interest therein must run to some *person*, (a corporation being regarded in law as a person) and a partnership, as such, not being a person, conveyances of real estate for the use and benefit of a partnership, have usually and aptly been made to the individual partners jointly, as tenants in common.   *Collyer on Partnership*, § 133, *et seq. and notes ; Parsons on Partnership, ch.* 41, *sec.* 2 ; *Dyer vs. Clark*, 5 *Metcalf*, 562 ; *Howard vs. Priest*, 5 *Ib.* 582.   If then the mortgage in this case was taken for the use and benefit of the partnership, it was, in accordance with common usage, properly made to run to the individual partners as grantees, and Sidle, as the managing partner under the partnership articles, had the right to take it in this form for and as the property of the partnership.

While parol evidence could not be received for the purpose of varying the *language* of the mortgage, it was allowable to show by parol, facts and circumstances with the object of putting the court, as far as might be, in the situation of the parties at the time it was made and executed.   1 *Gr. Evid.*, § § 278, 288 ; *Sanborn vs. Neal*, 4 *Minn.* 126.

It was therefore proper for the court below to receive the parol evidence showing, and from which it has found, that the funds loaned on the mortgage were wholly partnership funds, and that the mortgage and the notes secured by it were taken by Sidle in the ordinary and usual course of the firm business, and as and for the property of the partnership.   And there was no impropriety in going farther, and supporting this testimony by receiving parol evidence, as the court did, to show, according to the findings, that the notes and mortgage,

and the money received on the sale of the same to Lewis, were kept, treated and accounted for as and for the property of the partnership. Nor was there any impropriety in showing by parol the further fact found by the court, " that it was the usual custom of said Sidle in taking mortgage securities of said firm, to take them in the form in which this was taken, as to reciting the names of the partners, of which all the members of the firm were aware."

From these findings it is manifest that the loan of money and the taking of the mortgage were *in fact* partnership transactions, and that the notes and mortgage were *in fact* the property of the partnership.

As they were *property* of the partnership, it was, *therefore*, competent for the partnership to sell or dispose of them. Such right of sale or disposition is not expressly provided for in the articles of partnership, but it is an incident of the right of property, and the omission to provide for it in the articles, no more proves that it did not exist, than the failure to provide for the right of collecting or receiving the money loaned by the partnership, shows that the partnership had no right so to collect or receive. The court below has found that Lewis purchased said notes and mortgage of Sidle, Wolford & Co., through Sidle, the managing partner, paying therefor the full amount due thereon, which amount went into and became a part of the partnership funds, Blair receiving his part thereof; and that Sidle, acting for said firm, in the course of the business thereof, thereupon delivered said mortgage and notes to said Lewis, and thereupon as evidence of such sale, executed to said Lewis the written assignment aforesaid, said Sidle and Wolford being present and signing the same, but the said Blair being absent his name was signed thereto by said Sidle acting for him.

As by the terms of the partnership articles it was expressly

Morrison v. Mendenhall.

provided that the "business of the company or co-partnership," should be transacted by Sidle, it was competent for Sidle, the managing partner and agent of the firm, as it was competent for the partnership, to dispose of and sell the notes and mortgage which were the *property* of the partnership, if the authority conferred upon him was conferred in proper form.

The mortgage though it is in effect but a lien or security, (See *Adams vs. Corriston,* 7 *Minn.* 462–3 ; *Hill et al. vs. Edwards,* 11 *Minn.* 29,) is in form a conveyance of an estate or interest in land, and is so treated and regarded in our statutes. (See *Pub. St., ch.* 35, *and Gen. St. ch.* 40, *passim.*) As such estate or interest it must at law be created and assigned by deed. 1 *Washburn Real Prop.,* [519] ; *see also Pub. St., ch.* 35, §§ 1, 30, 54, 56, 57, 63, 74, 24, 29 ; *Gen. St., ch.* 40, §§ 1, 21, 23, 25, 26, 32, 34, 35. And the necessity that the mortgage and assignment must not only be in writing, but by deed, is further apparent from sub. div. 3, sec. 20, ch. 75, Pub. St., which requires that to entitle a party to foreclose by advertisement, the mortgage and the assignment, if it shall have been assigned, shall be recorded ; for neither is authorized to be recorded under our statute except it be under seal, and duly acknowledged. *Pub. St., ch.* 35, § 1, 30, 60, &c. It was then necessary in this case that the assignment of the mortgage should be by deed.

The general rule is that an authority to execute a sealed instrument for another must also be under seal. Applying this rule to this case, we are of opinion that by the articles of partnership, which were under seal, authority was conferred upon Sidle to execute for the partnership any sealed instrument which might be proper and requisite for the transaction of partnership business ; such instrument to be executed, as the court below finds the assignment was in this instance, in the course of the partnership business. The language of the

articles is, " the business of the company or co-partnership to be transacted * * by the said J. K. Sidle." Now if the assignment of the mortgage in this case was " business of the company or co-partnership," there can be no reason why he was not as much authorized by the sealed articles to do this business as any other. The effect of this provision of the articles was, in addition to his ordinary power as a partner, to make him by authority under seal the managing partner of the concern. Apart, however, from the sealed authority conferred by the articles, we think there is much in the finding of the court below to justify the inference, that if there was not a previous parol authority to Sidle to make the assignment under seal, there was, at least, a subsequent parol assent to the same by Blair. The court finds that " Sidle was the managing " agent and partner in the transaction of the business of said " firm ; that * * Blair was * * * a non-resident of the " state, * * but was kept advised by said Sidle of the con- " dition of the affairs of said firm * * * that the notes " and mortgage were kept and held and accounted for by said " Sidle, as and for the property of said partnership, and in the " same manner as other loans and securities of said firm, and " were taken by him in the ordinary and usual course of the " firm business ; that it was the usual custom of said Sidle in " taking mortgage securities of said firm, to take them in the " form in which this was taken, as to reciting the names of the " partners, of which all the members of the firm were aware ; " that * * Lewis purchased of said Sidle, Wolford & Co., " through the said J. K. Sidle, managing partner as aforesaid, " * * the * * notes and mortgage, and paid them there- " for the full amount due thereon at that date, to-wit : the " sum of $1,401, which sum went into and became a part of " the partnership funds of said partnership, and the said Blair ' received his part thereof. And the said Sidle, acting for

Morrison v. Mendenhall.

" said firm in the course of the business thereof, thereupon
" delivered the said mortgage and notes  *  *  to the said
" Lewis, and the same were retained by him, and thereupon,
" as evidence of such sale, the said parties executed to said
" Lewis the  *  *  written assignment thereof, said Sidle and
" Wolford being present and signing the same, but the said
" Blair being absent, his name was signed thereto by said
" Sidle acting for him ;  *  *  that it does not appear that the
" said James N. Blair ever objected to said transfer and assign-
" ment of said notes and mortgage by said Sidle to said Lewis."
It further appears that the assignment was made May 18th,
1859, and the foreclosure sale December 18th, 1860, while the
deed under which defendant claims was not made until Febru-
ary 16th, 1863, nearly four years after the assignment. We
think argument can hardly be required to show that these
facts furnish very strong circumstantial, if not direct evidence
of a parol ratification of the assignment by Blair long before
any right or claim to the premises in question accrued to the
defendant.

And in addition to all this, the court finds that the defend-
ant, in the winter of 1862 and 1863, commenced negotiations
for the purchase of Lewis of a second mortgage made by
Hoag upon these and other premises, and " had notice of the
facts in relation to the foreclosure of said first mortgage, and
*  *  also the transfer thereof from said Sidle, Wolford & Co."

Without consuming further space upon the matter of ratifica-
tion, we think the importance of the facts thus found by the court
will be appreciated when it is considered that it has come to be
established, " that a partnership will be bound by a deed exe-
cuted by one partner on its behalf, provided the act of such
partner have from his co-partners, either a previous parol
or a subsequent parol ratification, which may be expressed or
implied." *Parson's Partnership* 181, *note and cases cited; Gram*

*vs. Seton,* 1 *Hall,* 262, *Smith vs. Kerr,* 3 *Comstock,* 150 ; *Cady vs. Shephard,* 11 *Pick.* 400 ; *Swan vs. Steadman,* 4 *Met.* 548 ; 1 *Am. Lea. Ca.,* 4th *Ed.* 450.

It is argued, however, by defendant, that there is no evidence of any legal assignment of the mortgage by the firm; that the instrument claimed to be an assignment does not purport to be the act of the firm. We have already determined that the mortgage in this case which the court below has found to have been taken for the use and benefit of the partnership, was properly, and in accordance with common usage, made to run to the individuals composing the firm by their own names, describing them as " doing business under the firm name of Sidle, Wolford & Co."

If this is so, it certainly must be equally proper that in case of assignment, the mortgage should be assigned by the individuals composing the partnership, by their own names, describing them as before. (See *Dillon vs. Brown,* 11 *Gray,* 180.) Even if it would be proper under any circumstances to assign a mortgage, belonging, as this did, to a partnership, in the name of the firm as assignor, there can certainly be no doubt that where the mortgage runs, as this did, to the individual members of the firm, described as aforesaid, the mortgage may be effectually assigned by such individual members by their separate names, and this would appear, as a matter of common sense, to be the only proper way of making such assignment. So far as the power of Sidle to sign the separate name of Blair is concerned, we merely say, *mutatis mutandis,* as is said in *Patch vs. Wheatland,* 8 *Allen,* 102, viz.: that one of the co-partners, (Sidle) having authority to pass a valid title to, and to assign the mortgage by the sealed articles of partnership, as incident thereto, could execute such assignment in any form or mode by which such title could be legally transferred. He could execute such assignment by signing

Morrison v. Mendenhall.

the firm name, (if that were a proper mode of assignment) or the name of each co-partner separately.

We are, therefore, of opinion that the instrument executed as aforesaid, was a written and sealed assignment of the mortgage, and operated to transfer a complete title to the mortgage to Lewis, the assignee. It was argued by defendant, that a fair and reasonable construction of the law would require that a power to execute an assignment should be recorded before a foreclosure by advertisement by the assignee. The statute, however, requires no such record, and for reasons before given, we are of opinion that it is not a pre-requisite to the right to foreclose.

As no question is made here against the validity of plaintiff's title, except such as is raised by the claim that no assignment of the same sufficient to authorize a foreclosure by advertisement was made and recorded, the view which we take of that question renders it unnecessary for us to consider the other matters presented in the briefs of counsel.

Judgment affirmed.