65  367
66  416
65  367
72  521

ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY v.
MICHAEL BROULETTE.[1]

July 3, 1896.

Nos. 9882—(142).

Railroad Grant — Extension of Time — Sp. Laws 1877, c. 201 — Sp.
Laws 1878, c. 71.

Sp. Laws 1877, c. 201, approved March 1, relating to the extension of the
time for the completion of the St. Paul & Pacific Railroad Company's Exten-
sion Lines, as amended by Sp. Laws 1878, c. 71, construed and *held* that,
to entitle a party to the benefit and protection of the provisions of section 10
of the original act, he must have settled upon the land claimed on or prior
to March 1, 1877.

Appeal by plaintiff from parts of a judgment of the district court
for Polk county, in favor of defendant, entered in pursuance of the
findings and order of Ives, J.   Modified.

*M. D. Grover, A. C. Wilkinson,* and *Thos. R. Benton,* for appel-
lant.

*H. Steenerson,* for respondent.

START, C. J.   This is an action of ejectment to recover from the
defendant the possession of the S. E. ¼ of section 3, township 150,
range 45, in Polk county in this state.   This land is within the in-
demnity limits of the grant to the territory and state by acts of con-
gress of March 3, 1857,[2] March 3, 1865,[3] and March 3, 1871,[4] to aid
in the construction of certain railroads, and was patented to the
state of Minnesota by the United States February 13, 1889, and deeded
by the state to the plaintiff March 13, 1889.   The defendant claims
that in the spring of 1877 one Frank Robert made improvements
upon the land, consisting of breaking, and on November 1, 1877, the
defendant purchased such improvements from Robert, who delivered
possession of the land to him, and that on March 1, 1878, he com-
menced the erection of a dwelling house on the east half of the land
which he then and still claims as a homestead; that in April, 1878,
his house was completed, and he moved into it, and has ever since

[1] Reported in 67 N. W. 1010.
[2] 11 Stat. 195.
[3] 13 Stat. 526.
[4] 16 Stat. 588.

occupied such east half of the premises with his family. The trial court found that plaintiff was the owner of the west half of the quarter section in question, and that the plaintiff held the legal title to the east half thereof in trust for the defendant, and directed that it convey the same to the defendant. Judgment was entered accordingly, from which the plaintiff appealed.

Counsel for the plaintiff, in his brief and argument, has discussed a number of propositions, but, in the view which we take of the case, there is but one question which it is necessary for us to decide, viz.: Has the defendant established a claim to the land here in question, under the provisions of Sp. Laws 1877, c. 201, as amended by Sp. Laws 1878, c. 71? If he has, the judgment of the district court is correct; otherwise, it must be modified. The plaintiff holds the legal title to the land; hence the burden was on the defendant, although he is in possession, to establish his claim.

Sp. Laws 1877, c. 201, was approved March 1, and is entitled "An act to provide for the completion of the lines of railroad commonly known as the St. Paul and Pacific Extension Lines." The uncompleted lines referred to in this title were one from Watab to Brainerd, and one from St. Cloud, via Crookston, to St. Vincent. At this date the time limited in which such lines were to be completed in order to secure the land grant had expired, and the right to declare the lands forfeited for noncompliance with the conditions of the grant was absolute. St. Paul, M. & M. R. Co. v. Greenhalgh, 26 Fed. 563, 139 U. S. 19, 11 Sup. Ct. 395. By sections one to five, inclusive, of the act, the grants of land appertaining to the Watab and Brainerd line were forfeited, and provisions made for regranting the lands to whatever company might undertake the construction of the line. Sections six and ten of the act refer to the second-named line, and are the only ones here material. The material provisions of sections six and ten read thus:

"Sec. 6. The time for the completion of the uncompleted portions of the line of railroad extending from St. Cloud to St. Vincent, commonly known as the 'St. Vincent Branch of the St. Paul and Pacific Extension Lines,' is hereby extended as follows: From Melrose to Sauk Center, until July one (1), A. D. one thousand eight hundred and seventy-eight (1878); from Sauk Center to Alexandria, until January one (1), A. D. one thousand eight hundred and seventy-nine (1879); from Alexandria to Fergus Falls, and from Crookston to St. Vincent,

until January one (1), A. D. one thousand eight hundred and eighty (1880); from Fergus Falls to Glyndon, until January one (1), A. D. one thousand eight hundred and eighty-one (1881). Provided, however, that such extensions of time are made subject to all the provisions of this and of the succeeding sections of this act."

"Sec. 10. The Saint Paul and Pacific Railroad Company, or any company or corporation taking the benefits of this act, shall not in any manner, directly or indirectly, acquire or become seized of any right, title, interest, claim, or demand in or to any piece or parcel of land lying and being within the granted or indemnity limits of said branch lines of road, to which legal and full title has not been perfected in said Saint Paul and Pacific Railroad Company, or their successors or assigns, upon which any person or persons have in good faith settled and made or acquired valuable improvements thereon, on or before the passage of this act, or upon any of said lands upon which has been filed any valid pre-emption or homestead filing or entry—not to exceed one hundred and sixty (160) acres to any one actual settler; and the governor of this state shall deed and relinquish to the United States all pieces or parcels of said lands so settled upon by any and all actual settlers as aforesaid, to the end that all such actual settlers may acquire title to the lands upon which they actually reside, from the United States, as homesteads or otherwise."

These sections, in effect, declare a forfeiture pro tanto of so much of the land lying within the granted or indemnity limits of the railway line in question as any person had in good faith settled upon, and made or acquired valuable improvements thereon, on or before March 1, 1877, the day the act became a law, and condoned as to the balance of the land the default to complete the line within the time previously limited, by extending the time for its completion. It was only as to land settled upon by bona fide actual settlers that a forfeiture was declared. It is clear that the defendant did not acquire any right to the land here in dispute by his purchase of Robert's improvements, for the trial court did not find that Robert made any improvements on the land on or prior to March 1, 1877; it simply found that in the spring of 1877 he made the improvements. The finding would be correct if the improvements were made at any time during the months of March, April, or May. The evidence is undisputed that Robert was neither the head of a family nor 21 years of age when he made the improvements. He did not attain his majority until April 26, 1879, and never was an actual settler on the land, bona fide or otherwise. It follows, then, that, if the act of 1877 had not been

65 M.—24

amended by the act of 1878, the defendant would have no claim to the land. We understand his counsel to concede this. He says in his brief:

"We concede that Broulette was not within the original act, but insist that he is within the amended act, and therefore, as to this case, the whole act of 1877 is in effect re-enacted by the act of 1878, not one section, but the whole act."

Sp. Laws 1878, c. 71, was approved March 9, and is entitled "An act to amend chapter two hundred and one of the Special Laws of one thousand eight hundred and seventy-seven," adding the title of the latter act. Section one of the act of 1878, so far as here material, reads as follows:

"Section 1. Section six (6) of said act is hereby amended so as to read as follows: 'Sec. 6. The time for the completion of the uncompleted portions of the line of railroad extending from St. Cloud to St. Vincent, commonly known as the St. Vincent Branch of the St. Paul and Pacific Extension Lines, is hereby extended as follows: From Melrose to Sauk Center, until August one (1), A. D. one thousand eight hundred and seventy-eight (1878). From Sauk Center to Alexandria, until December one (1), A. D. one thousand eight hundred and seventy-eight (1878). From Crookston to St. Vincent, until January one (1), A. D. one thousand eight hundred and eighty (1880). From Alexandria to Fergus Falls, until January one (1), A. D. one thousand eight hundred and eighty (1880). From Fergus Falls to Glyndon, until January one (1), A. D. one thousand eight hundred and eighty-one (1881). Provided, however, that such extensions of time are made subject to all the provisions of this and of the succeeding sections of this act.'"

Sections 2 and 3 amend section 7 of the original act; section 4 strikes out certain provisions of section 9 of the former act; and section 6 (there is no section 5) provides that the act shall take effect and be in force from and after its passage. Section 10 of the act of 1877 is in no manner referred to in this act of 1878.

The defendant claims that the effect of these changes was to re-enact the whole act of 1877, so that the claims of all persons that had settled on any of the lands within the granted or indemnity limits after the passage of the act of 1877, and before the passage of the act of 1878, were saved and secured to them by section 10, precisely as if their settlement had been made on or prior to March 1, 1877, the time when the original act was approved.

An amendment of a statute "so as to read as follows" takes the

place of the original, and operates to repeal all of it which is not embraced in the amendment.    But the provisions of the original which are merely copied and retained in the new section without change are not repealed and re-enacted, but continue to be the law as before, while the changed portions are to be treated as having been the law only from the date of the amendatory act.

"This form of amending statutes is frequently used, and was adopted as a convenient mode of preserving a harmonious text, by incorporating the amendments into the original law, and presenting both together.    Except in this respect, an amendment made in this way has no greater effect than if made in the form of an independent statute." Kerlinger v. Barnes, 14 Minn. 398, 401 (526). Sutherland, St. Const. § 133.

Now, a comparison of the provisions which we have quoted of section 6 before amendment and after shows that the only change or extension of time in which to build the line made by the amendment was that the time for completing that part of the line between Melrose and Sauk Center was extended one month; that is, from July 1, 1878, to August 1, 1878; while the time for completing the line from Sauk Center to Alexandria was reduced one month,—that is, from January 1, 1879, to December 1, 1878.    All the rest of the amendment is simply a literal copy of the original.    It declares no new cases of forfeiture, and the proviso making the extension of time "subject to all the provisions of this and of the succeeding sections of this act" must be treated as having been the law from the date of the passage of the original act, and cannot be construed as amending section 10 so as to declare a forfeiture of all lands settled upon by any person on or prior to date of the amendment, March 9, 1878. This would have been perfectly clear if the amendments had been by an independent statute, simply providing that the time for the completion of one specified part of the line should be extended one month, and reduced one month as to another specified part; but, as already suggested, the form of the amendment actually adopted cannot be given any greater effect as to the question we are considering than if it had been by an independent statute.    The amendment to section 6 did not change the date of the passage of the act of 1877, which is the time fixed in section 10 at or before which the rights of settlers must have accrued in order to come within its provisions.    If this latter section had been amended and re-enacted with section 6,

we might have a very different question; but such is not the case, and we cannot by construction do that which the legislature has not done, and re-enact section 10, making the date of its passage March 9, 1878, instead of the actual date March 1, 1877. It is clear, both from what the legislature did do and what it failed to do, by the act of 1878, that it had no intention of forfeiting any more of the land grant than had been done by the act of 1877, for the railroad company was not then in default as to the construction of any portion of the line, and presumably there were no bona fide settlers to be protected except those already provided for by section 10 of the original act. The manifest purpose of the amendment to section 6 was simply to extend the time for the completion of one part of the line for one month, and correspondingly reduce the time as to another part.

Assuming, then, without so deciding, that all the facts found by the trial court as to the settlement of the defendant on the land in question are sustained by the evidence, it follows that its conclusion of law that he is the equitable owner of the land cannot be sustained, for he has failed to bring his case within the provisions of Sp. Laws 1877, c. 201, § 10, by showing that he or some party through whom he claims settled on the land on or prior to March 1, 1877.

The judgment must be modified so as to adjudge that the plaintiff is the owner and entitled to the possession of the whole of the premises described in the complaint in this action. So ordered.