# DULUTH TERMINAL RAILWAY COMPANY v. CITY OF DULUTH.[1]

February 17, 1911.

Nos. 16,793—(222).

**Priority of franchise over condemnation proceedings — evidence.**

The city of Duluth, by ordinance, granted to the Duluth-Thunder Bay Railway Company a franchise on specified terms and conditions to construct a railway along Arthur avenue extended. Said company accepted the ordinance and is constructing the railway. Prior to the passage of this ordinance, but subsequent to its introduction in the city council, the petitioner herein instituted condemnation proceedings to acquire the right to construct a railway along the same portion of the street. The two rights being inconsistent, the franchise granted by the ordinance is the prior and superior right, and the city of Duluth had such an interest in the contract ordinance that it could introduce such grant in evidence, and base thereon an objection to the prosecution of the condemnation proceedings instituted by the petitioner; the Duluth-Thunder Bay Railway Company not objecting to such proceedings.

**Right of way upon city or village street — amendment by act of 1893.**

Chapter 74, Laws 1893, an amendment to section 1 of title 1 of chapter 34, G. S. 1866, provided that no corporation formed under this title shall have any right to construct, maintain, or operate upon or within any street of any city or village a railway of any kind, without first obtaining a franchise therefor from such city or village. This provision was in direct partial conflict with the provision of section 29 of said chapter, authorizing railway

[1]Reported in 130 N. W. 18.

companies to acquire, by condemnation, the right to occupy any road, street, or alley for the necessary location of its railroad. To the extent of such conflict, section 29 was amended, and the right therein given a railway company to appropriate, through condemnation proceedings, such portion of highways as may be necessary for the construction of its road, without first obtaining a franchise, was limited to highways outside of cities and villages.

**Effect of act.**

The amendment of 1893 applies to action taken thereafter, but with reference to such action the section is construed as if originally enacted in its amended form. It therefore limits the power conferred on all corporations organized thereunder, whether organized prior to or after 1893.

**Obligation of contract not impaired by act.**

The placing of such limitation on the power of eminent domain, by an amendment to the general law conferring the power, did not impair the obligation of a contract or destroy any property right.

**Revised Laws 1905.**

The provisions of the statutes referred to were carried forward into the Revision of 1905 under a different arrangement of and subdivision into sections. But by such rearrangement no alteration was apparently intended, and none was therefore made in the existing law.

**Right of way upon city or village street — condemnation.**

A railway company, organized under title 1, c. 34, G. S. 1878, whether organized before or since 1893, is not authorized by the laws of this state, special reference being had to sections 2841 and 2916, R. L. 1905, to acquire by condemnation proceedings the public easement in any portion of a street within a city or village to construct, maintain, or operate a railway of any kind along such street. A franchise must first be obtained from the city or village before such railway company can acquire such right to construct, maintain, or operate a railway along a street therein.

The Duluth Terminal Railway Company, a common user railway having tracks but no trains, petitioned the district court for St. Louis county to condemn a right of way for the construction of an elevated double track extension of its existing elevated railway at a general height of about twenty-two feet above the surface of the ground, and at all places of sufficient height to permit the passage thereunder of public travel, vehicles, foot passengers and street railroads, to an abutment of the bridge of the Duluth & Superior Bridge Company, called the Interstate bridge. The Duluth & Superior Bridge Company filed an answer alleging that, under the act of congress authorizing the construction of the bridge (28 St. c. 64) it was

the only person or corporation authorized to construct and operate approaches to its bridge, and as it was able and willing to construct such approach for railway purposes in strict accordance with the terms of the act, it prayed for the dismissal of the petition. The Duluth-Thunder Bay Railway Company filed no answer or objections to this petition.

At the hearing before Dibell, J., the city of Duluth objected to the proceeding, and the appointment of commissioners, upon the ground that the property described in the petition constituted a part of the public highways, streets, avenues and alleys of the city, and upon the ground that it is a condition precedent to the right of petitioner to use such property that it first obtain from the city a franchise, and compensate the city for such franchise; that petitioner has not obtained such franchise, has not applied to obtain such franchise, and has no right whatsoever to condemn property in the streets or highways of the city; that the control of the location of railway tracks on the streets within the city is especially vested in the common council of the city, that the common council has not given petitioner permission to locate its tracks within the city, and on the further ground that the common council has granted the rights to other corporations to use portions of the property sought to be condemned by the petitioner, and has prescribed terms and conditions upon which such property in the streets and highways of the city may be used by public service corporations; that petitioner has not in any way complied or offered to comply with such terms and conditions, and upon the further ground that this is an attempt in condemnation proceedings to litigate the validity of a right, which petitioner claims, to use certain streets of the city, and in this proceeding the court has no jurisdiction to determine such controversy.

When the petitioner rested, the city moved to dismiss the petition upon the grounds: (1) That this was an attempt to litigate the validity of a certain ordinance of April 30, 1888, and the rights in the streets claimed thereunder by the petitioner as to all of the property involved in the proceeding, except Arthur avenue extended; (2) that as to Arthur avenue extended no consent of the city

to the use of the street for the construction of railroad tracks was shown; (3) that as to Arthur avenue extended the evidence showed petitioner had knowledge of the negotiations between the city and the Duluth-Thunder Bay Railway Company which resulted in a franchise from the city to the company; (4) that the petitioner had failed to show the necessity. The motion to dismiss was denied. The court made findings, covering the facts stated in the first four paragraphs of the opinion, and as a conclusion of law dismissed the proceeding. From that order, petitioner appealed. Affirmed.

*J. A. Murphy,* and *Baldwin, Baldwin & Dancer,* for appellant.
*Bert Fesler,* for respondent city.

SIMPSON, J.

This is a condemnation proceeding instituted by the Duluth Terminal Railway Company. The Duluth-Thunder Bay Railway Company condemned certain lands in the city of Duluth, and laid out a proposed railway line over such lands and along Arthur avenue extended, a street in the city of Duluth, connecting with the Interstate bridge. Later an ordinance was introduced in the city council of the city of Duluth, granting to the said Duluth-Thunder Bay Railway Company, upon certain specified terms and conditions, the right and franchise to erect and maintain a single or double track railway upon a trestle from said Interstate bridge, along said Arthur avenue extended, for a distance of some six hundred feet, and thence along a designated route. This ordinance was in due course thereafter passed and approved January 13, 1909. The Duluth-Thunder Bay Railway Company duly accepted the franchise thereby granted, and agreed to perform all acts and things by the terms of the ordinance required of it, and thereupon commenced constructing the trestle provided for therein.

After this ordinance was introduced, and shortly before its passage, the Duluth Terminal Railway Company instituted these condemnation proceedings, and thereby seeks to acquire, among other lands, for use for the construction of an extension of its line of railway, the strip of land in Arthur avenue extended, over which, by the ordinance referred to, the Duluth-Thunder Bay Railway Com-

pany was granted the right to construct and maintain a railway line. The Duluth Terminal Railway Company was organized in 1887 under title 1, c. 34, G. S. 1878. In 1888 the city of Duluth granted it a franchise to construct railway tracks on certain named streets for operating a line of railway and for furnishing trackage connections to other railroads. Beginning about two years thereafter it constructed several miles of terminal or connecting tracks, and has since maintained them, furnishing thereby trackage facilities for such other railway companies as desire to use the same. This proposed extension along Arthur avenue is desired to connect its present tracks with the tracks on the Interstate bridge.

Among the terms contained in the ordinance granting the franchise to the Duluth-Thunder Bay Railway Company to construct and maintain tracks over Arthur avenue extended, connecting with the Interstate bridge, was the requirement that all other railway companies should be permitted to use such tracks to their capacity, upon conditions substantially like those imposed by the ordinance upon the owning company. Thereby the elevated structure being built by the Duluth-Thunder Bay Railway Company is made to afford access to the Interstate bridge for railway companies of much the same character and convenience which would be afforded if such tracks were constructed by the petitioner. It is entirely impracticable to have more than one such approach to the bridge along Arthur avenue extended.

Upon the hearing on the petition the court found, in addition to the facts above stated, that the public interest does not require the track proposed to be constructed by the petitioner, and directed the entry of judgment dismissing this proceeding. From such order the petitioner appeals. The city of Duluth appeared in the court below in opposition to the proposed condemnation, and appears in this court as respondent.

By the appeal, three questions are raised in this court for determination:

1. Did the city of Duluth have the right on the hearing to introduce evidence tending to show a prior right or easement of the Duluth-Thunder Bay Railway Company in Arthur avenue extended, and

to interpose such prior easement as an objection to the taking of the same land by the appellant; the Duluth-Thunder Bay Railway Company not objecting?

2. Is the right of the Duluth-Thunder Bay Railway Company to the use of the strip of land in Arthur avenue extended for connecting railway tracks superior to the right herein sought to be acquired by the appellant?

3. Can the petitioner, by condemnation proceedings, acquire the right to construct, maintain, and operate its railway upon a street in the city of Duluth; it not having first obtained from said city a franchise conferring such right?

The fundamental question is the last one above stated, involving, as it does, the power of the appellant, under the laws of the state, to acquire the right here sought in Arthur avenue extended by condemnation proceedings.

Section 2916, R. L. 1905, is as follows: "When, in the location of any railroad, it becomes necessary to occupy any road, street, alley, or other public way, the municipal corporation or other public authority owning or having charge thereof and the railroad company may agree upon the manner, terms, and conditions in and upon which the same may be used or occupied, or such corporation may appropriate so much of the same as shall be necessary by condemnation proceedings under the right of eminent domain." This provision, in substantially its present form, was contained in the Revised Statutes of 1866. Under it the public easement in a street or highway, as well within cities and villages as in country districts, could be and was frequently acquired by condemnation proceedings. Kaiser v. St. Paul, S. & T. F. R. Co., 22 Minn. 149; Campbell v. City of Stillwater, 32 Minn. 308, 20 N. W. 320, 50 Am. Rep. 567; Harrington v. St. Paul & S. C. R. Co., 17 Minn. 188 (215); Adams v. Hastings & D. R. Co., 18 Minn. 236 (260).

Section 2841, R. L. 1905, is as follows: "Corporations may be organized for the construction, acquisition, maintenance, or operation of any work of internal improvement, including railways, street railways, telegraph and telephone lines, canals, slack-water, or other navigation, dams to create or improve a water supply or to furnish

power for public use, and any work for supplying the public, by whatever means, with water, light, heat, or power, including all requisite subways, pipes, and other conduits. But no corporation so formed shall construct, maintain, or operate a railway of any kind, or any subway, pipe line, or other conduit in or upon any street, alley, or other public ground of a city or village, without first obtaining from, and compensating said city or village for, a franchise conferring such right."

The last part of section 2841 in terms applies to the construction, maintenance or operation of a railway of any kind upon any street of a city or village by corporations organized to construct and operate railways. Its apparent force and effect is to limit the authority to appropriate, by condemnation proceedings, so much of highways, roads, and streets as may be necessary in the location of a railroad, conferred by section 2916, to such highways as are not within the limits of cities or villages. To ascertain clearly the relationship of the two sections, it is necessary to examine their history and the provisions of the law therein, as they existed prior to the revision of 1905.

Title 1, c. 34, G. S. 1866, provides for the organization of corporations having the right of eminent domain. Sections 1 and 29 of this title, the two sections involved in the present inquiry, are as follows:

"Section 1. Any number of persons, not less than five, may associate themselves and become incorporated for the purpose of building, improving and operating railways, telegraphs, canals, or slackwater navigation, upon any river or lake, and all works of internal improvement which require the taking of private property or any easement therein."

"Sec. 29. If it becomes necessary, in the location of any part of a railroad, to occupy any road, street, alley, or public way, or any part thereof, it shall be competent for the municipal or other corporation or public officer, or public authorities, owning or having charge thereof, and the railroad company, to agree upon the manner and upon the terms and conditions upon which the same may be used or occupied; or such company may appropriate so much of the same as

113 M.—30.

may be necessary for the purposes of said road, in the same manner and upon the same terms as is herein provided for the appropriation of the property of individuals."

Eliminating amendments and provisions not material here, by chapter 74, p. 189, Laws 1893, section 1 was amended "so as to read as follows," by adding to it the following provision: "But no corporation formed under this title shall have any right to construct, maintain or operate upon or within any street, alleys or other highway of any city or village, a railway of any kind or any subway, pipe line or other conduit for supplying the public with water, gas light, electric light, heat, power or transportation or any improvement of whatsoever nature or kind, without first obtaining a franchise therefor from such city or village according to the terms of its charter and without first making just compensation therefor, as herein provided."

Clearly this amendment had the same effect upon section 29 as if it had been added to it, instead of to section 1. By its terms the amendment applies to all corporations organized under title 1. The corporations referred to in section 29 are organized under title 1 and are as directly related to section 1 as any other corporations organized thereunder. Title 1 relates to one subject. The division into sections is not important in determining the meaning of the provisions contained in the title. In meaning and effect sections 1 and 29, as originally enacted, were one law and could be read consecutively. An amendment to such law necessarily changed all parts of the law in conflict with the amendatory provision. The amendment was appropriately put after section 1, instead of section 29, because it related to other structures as well as to railroads; but the amendment, in so far as it in terms relates to railroads, limits the right to take property or an easement therein for the construction of "a railway of any kind," and applies directly and manifestly to the right given in section 29. An examination of title 1 shows that it could have no other application.

As stated by Justice Mitchell, in Stevens v. City of Minneapolis, 29 Minn. 219, 12 N. W. 533: "The great fundamental rule in construing statutes is to ascertain the intent of the legislature, and to

attain this object every part of a statute must be considered in connection with the whole, so as, if possible, to give effect to every part." The legislature, in 1893, clearly intended to place a limit on the theretofore existing power of railway corporations to acquire, by condemnation, a public easement in highways for railroad purposes. Section 29 contained the theretofore existing power, and must yield to the limitation contained in the amendment.

The position that this amendment did not apply to section 29, because it was general and applied to other structures as well as railways, while section 29, containing a conflicting provision, was limited to railways, is clearly untenable. It ignores and makes meaningless the inclusion specifically of "railways of any kind" among the structures covered by the amendment. The same rule might equally well be applied to the other structures mentioned, and thus the entire amendment would be meaningless. In fact, this amendment, limiting as it does, the right of condemnation as to a particular class of streets, is the more special act. A grant of power to railways organized under section 1 to condemn a right of way upon all streets is directly in partial conflict with the amendment to section 1 providing that railways so organized shall not possess that right as to city streets, and because of such partial conflict the amendment necessarily modifies the power by limiting it to streets outside of cities.

Nor is there any basis for the suggested construction that section 1, as amended, be read as if the word "hereafter" were inserted in it, and section 29 as if the words "heretofore organized" were inserted in such section. Section 1 is the foundation section providing the method of organization of all corporations embraced in title 1. When amended, it still so provides, and necessarily refers to the same corporations that section 29 refers to. The amendment, going as it does to a particular power of corporations, applies, of course, to the exercise of that power thereafter and not theretofore. But section 1, as a law, dates back to its enactment, and not to the date of the amendment, and applies to corporations organized before the amendment, as well as to those organized after. St. Paul, M. & M. Ry. Co. v. Broulette, 65 Minn. 367, 67 N. W. 1010; City of Duluth

v. Duluth Telephone Co., 84 Minn. 486, 87 N. W. 1127; Sutherland, St. Const. § 237.

These provisions were carried forward into the Revised Laws of 1905. By the consolidation, in the Revised Laws, of titles 1 and 2 of the former statutes, and the rearrangement and new division of the various provisions of the law into sections, the relation to each other of the sections under consideration is not as apparent as it was before the revision. But an examination of these provisions, as contained in the Revised Laws, in connection with the statutes as they theretofore existed, discloses no purpose to change the former meaning or effect. Changes made by a revision will not be construed as altering the law, unless it is clear that such was the intention. Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243.

Neither section 2926 nor section 2838, R. L. 1905, affects the question under consideration. Nor does the fact that the tracks along Arthur avenue extended connect at one end with a bridge over navigable waters in any way affect the question here involved. Such fact tends strongly to show the necessity of the use of the street for railway purposes; but section 2841 does not contemplate the prevention of proper public improvements. It undertakes to regulate the manner in which a public easement under control of a branch of the state may be transferred to a public service corporation.

Under this construction given to the amendment of 1893, that it limited the theretofore existing right of eminent domain and took away the right of the appellant to acquire, without a franchise, by condemnation, a right of way in Arthur avenue extended, the amendment does not impair a contract right or privilege granted to respondent by the state. Admittedly appellant never acquired nor had any right to construct a track on Arthur avenue extended. By the present condemnation proceeding it is seeking to acquire that right. By an ordinance of the city of Duluth it was given a right to construct its tracks on several streets named therein. Arthur avenue extended was not included, and in fact there was no such street at the time the ordinance was passed. The respondent, in common with all other railways, had the right, prior to the amendment of 1893, to institute condemnation proceedings to acquire a right of

way on city streets. Any easement acquired under the power became a property right and is protected; but the power, not exercised, conferred by general law, to acquire specific property by condemnation, was not a property right, nor a matter of contract with the state, but was a matter of general law, and as such subject to modification. In Pearsall v. Great Northern Ry. Co., 161 U. S. 646, 16 Sup. Ct. 705, 40 L. ed. 838, it was held that "where, by a railway charter, a general power is given to consolidate with, purchase, lease, or acquire the stock of other roads, which has remained unexecuted, it is within the competency of the legislature to declare, by subsequent acts, that this power shall not extend to the purchase, lease, or consolidation with parallel or competing lines."

Such a change as is here involved in the law governing the exercise of the power of eminent domain does not impair any contract right of corporations possessing that power. In Pennsylvania R. Co. v. Miller, 132 U. S. 75, 10 Sup. Ct. 34, 33 L. ed. 267, it was held that the state could modify the right of eminent domain given the plaintiff company by its charter, and, referring to damages in condemnation proceedings, it was stated: "Although it may have been the law in respect to the defendant, prior to the constitution of 1873, that under its charter, and the statutes in regard to it, it was not liable for such consequential damages, yet there was no contract in that charter, or in any statute in regard to the defendant, prior to the constitution of 1873, that it should always be exempt from such liability, or that the state, by a new constitutional provision, or the legislature, should not have power to impose such liability upon it, in cases which should arise after the exercise of such power. * * * The provision contained in the constitution of 1873 was merely a restraint upon the future exercise by the defendant of the right of eminent domain imparted to it by the state." Wisconsin v. Cornell University, 52 Wis. 537, 8 N. W. 491; Chattaroi v. Kinner, 81 Ky. 221; People v. Adirondack, 160 N. Y. 225, 54 N. E. 689; Village of Hyde Park v. Oakwood, 119 Ill. 141, 7 N. E. 627.

The appellant refers to Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L.R.A.

175, and City of Duluth v. Duluth Telephone Co., supra, as sustaining its position in this proceeding.

This court, in Northwestern Tel. Exch. Co. v. City of Minneapolis, held that under chapter 12, § 1, p. 106, Laws 1860, as amended by chapter 73, p. 84, Laws 1881, a telephone company was given the right to erect and maintain its poles and wires along the public roads and highways in this state, and that the words "public roads and highways" included streets and alleys in cities. It was further held that where a telephone company had, under that law, erected poles and wires in the streets of the city of Minneapolis in accordance with the direction of the city council, the city council was thereafter powerless, arbitrarily and without cause, to remove the poles and wires from the street; such attempted removal not being an exercise of the police power or a regulation to promote the safety or convenience of ordinary travel on the streets. The important and debatable point covered by this decision, as finally announced and construed by the same court in a later case, was the interpretation of the words "roads and highways" in this law to include city streets. With such interpretation, and the fact thereby established that the telephone company had erected an extensive and costly system of poles and wires in the streets of the city of Minneapolis, under authority of and in reliance on the right so to do conferred by the state law, it followed that an order for the removal of all poles and overhead wires, if such order was arbitrary, unreasonable, and not designed for the protection or convenience of other uses of the street, was a prohibited destruction of the property rights of the company, and therefore void. In City of Duluth v. Duluth Telephone Co., supra, the stated rule of the Minneapolis telephone case was adhered to and applied to a telephone company which had established a system of poles and wires in the streets of the city of Duluth under the authority of the state law above referred to.

The facts upon which the decisions were based in the telephone cases clearly distinguish them from the present case. In those cases the telephone companies had, under authority of the state law, entered upon the streets and erected a system of poles and wires, and were resisting attempts to remove such poles and wires therefrom.

In the present case the appellant is seeking, by this proceeding, for the first time to acquire a right to construct a railroad along Arthur avenue extended.

In Minneapolis & St. P. Suburban Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, 112 N. W. 13, the effect of section 2841, R. L. 1905, was considered, and it was stated that this section applied to all cases where it is the intention to make use of a city or village street for the purpose of operating a railway along the same, and that in such cases a franchise must be obtained from the city or village, and that the power granted by section 2916 to this extent was limited and modified by section 2841.

The petitioner is seeking, in this proceeding, to acquire a right to construct a railway along Arthur avenue extended, a street in the city of Duluth, without obtaining a franchise from the city so to do. It cannot so acquire that right. We hold that the general laws of this state—special reference being had to sections 2841 and 2916, R. L. 1905—do not authorize a railway company, whether organized before or since 1893, to acquire, by condemnation proceedings, the public easement in any portion of a street within a city or village to construct, maintain, or operate a railway of any kind along such street, and that a franchise conferring such right must first be obtained from the city or village before a railway company, organized under the general laws of this state, can acquire the right to construct, maintain, or operate a railway along a street in such city or village. We limit this decision to the construction of a railroad along a street. The power of a railway company to acquire, by condemnation, the right to construct tracks across a city or village street, is not involved in these proceedings, or, if involved, was not considered in the court below, and was not discussed by counsel in this court. By so limiting the decision, however, we do not suggest that this court has determined that chapter 74, Laws 1893, does not apply to a railroad crossing a city street.

An extended discussion of the other questions raised by appellant is unnecessary. The city of Duluth had authority, by its charter, and under section 2841, R. L. 1905, to grant the Duluth-Thunder Bay Railway Company a franchise to construct a railway on Arthur

avenue extended.   Because of such grant of a franchise with terms attached thereto, and the acceptance of the same by the railway company, if on no other ground, the city had such an interest in the contract and the performance thereof by the railway company that it could introduce the same in evidence and base thereon an objection to the petitioner's application to acquire a conflicting easement in the street.   And the right so acquired by the Duluth-Thunder Bay Railway Company was prior and superior to the right sought to be acquired by the petitioner, and this would be true without regard to the effect of section 2841, R. L. 1905.   Under section 2916, R. L. 1905, two methods are provided by which the right to construct a railway along a highway may be acquired; i. e., by agreement with the authorities controlling the highway, or by condemnation.   In the present case, before the petitioner instituted these proceedings, the city council of Duluth, the authority in control of Arthur avenue extended, had put on its passage an agreement with the Thunder Bay Railway Company permitting that company to occupy such street, and in due course this agreement was consummated by the passage and approval of the ordinance and its acceptance by the railway company.   The right of the Thunder Bay Railway Company is therefore based on a lawful proceeding instituted prior to the condemnation proceedings herein, and would be, for that reason, a prior and superior right.   People v. Adirondack, 160 N. Y. 225, 54 N. E. 689; Chattaroi v. Kinner, 81 Ky. 221.

Affirmed.

JAGGARD, J., took no part.