F. C. Austin Mfg. Co. v. Twin Brooks Tp., Grant County.

1. Comp. Laws, §§ 715, 772, provide that the electors of a township shall have power to vote to raise such sums of money for the repair and construction of roads and other necessary town charges as they deem expedient, and that the supervisors shall have power "to draw orders for the disbursement of such sums as may be necessary for the purpose of defraying the incidental expenses of the town, and for all moneys raised by the town to be disbursed for any other purpose." Held, that supervisors have no power to purchase a road machine without authorization by the electors.

2. Comp. Laws, § 829, provides that "no town has power to contract debts or make expenditures for any one year in a larger sum than the amount of taxes assessed for such year, without having been authorized by a majority of the voters of such township, and no town shall assess for township purposes more than ten mills on the dollar of taxable property for any one year." Section 830 provides that the board of supervisors are authorized to issue bonds or orders of their respective towns in such amounts, and at such periods, as they may be directed by a two-thirds vote of the electors present and voting at a legally called meeting held for that purpose. Held, that supervisors are

without power to involve the township in indebtedness without any authorization by the electors.

3.  Township supervisors purchased a road machine without authorization by the township electors. A controversy arose as to the liability of the township therefor, and at an annual township meeting a resolution was adopted instructing the supervisors to settle for the machine at a figure at which it was supposed a compromise had been offered. Held, that such action did not constitute a ratification of the unauthorized act of the supervisors in purchasing the machine.

(Opinion filed July 2, 1902.)

Appeal from circuit court, Grant county. Hon. A. W. CAMPBELL, Judge.

Action by the F. C. Austin Manufacturing Company against Twin Brooks township, Grant county to recover the value of a road machine. From a judgment for plaintiff, defendant appeals. Reversed.

*Geo. S. Rix* and *Thomas L. Bouck*, for appellant.

*S. S. Lockhart* and *H. H. Potter*, for respondent.

CORSON, J. This is an action by the plaintiff to recover from the defendant the value of a certain road machine designated as the "Austin Reversible Steel Road Machine." Findings and judgment were for the plaintiff, and the defendant appeals.

On May 4, 1896, T. A. Falls and L. Cunningham, two of the supervisors of the township of Twin Brooks, ordered of the plaintiff the machine in controversy, to be shipped to said Falls, at Twin Brooks, at the specified price of $265. On May 29th the machine was received by the said Falls. and, upon the trial of the same, said Falls and Cunningham, as trustees, in payment of the same, signed three instruments bearing same date, payable in one, two, and three years, with interest at the

rate of 8 per cent. per annum. No use of this machine seems to have been made by the town except on two occasions, when one of the road supervisors of one of the road districts used it for about one day, and another supervisor used it for a few hours. At the annual town meeting on March 2, 1897, the following resolution was adopted: "On motion, it was resolved that the auditing board report pertaining to the issuing of warrants for road grader be rejected." At the regular annual meeting of the electors of the said town in March, 1900, the following resolution was adopted: "On motion, it was resolved that the board be instructed to settle with the Austin Mlg. Company at their terms, $165.00, or better, if possible. On motion it was resolved to give the road grader one year's trial, and if found unsatisfactory after a fair trial to sell it to the highest bidder." It further appears from the evidence that, a short time previous to the latter resolution being adopted, the attorney for the plaintiff mailed a letter to the township board making a proposition on the part of the plaintiff to settle with the town for $165, and it further appears from the evidence of the said attorney that in making this offer to the town he was acting without authority, and that he by mistake inserted in his letter the figures "165" instead of "265," and this mistake he corrected by letter of March 17, 1900, in which he says: "I had no authority to settle for $165. The mistake was a clerical error of mine, and done unintentionally." It further appears that, at their annual meeting in 1896, the electors made the following order: "On motion, it was ordered that the following sums of money be raised by tax upon the taxable property in said town, for the following purposes, for the current year: For township purposes, $250.00. For road

and bridge, .005.   For gopher bounty, $150,00.   On motion, it was resolved to have no poll tax for the year 1896." And it appears by the treasurer's report that, after paying orders for the current expenses for the year, there was a balance of about $50.

It is contended on the part of the appellant: (1) That the order given for the machine was not authorized by the electors of the town at their annual meeting, and therefore the board had no power to make the same for and on behalf of the town; (2) that the notes executed by Falls and Cunningham are void for the reason that they were not authorized to execute any time notes on behalf of the town for any purpose, and also for the reason that they were not authorized to incur on behalf of the town any indebtedness in excess of the amount of the levy for the year 1896; and (3) that the alleged ratification of the electors at their town meeting in March, 1900, did not constitute a ratification, for the reason that it was made under a mistake of fact, and in view of a compromise which was never carried into effect.   We are of the opinion that the appellant is correct in its contention.   Under the theory of township government in this state, substantially all the power pertaining to the government of the town rests with the electors of the township, to be exercised by them, either at their annual meeting in March, or at a special meeting called in the manner prescribed by law. The powers conferred upon the township supervisors are limited, and, as was said by this court in Aldrich v. Collins, 3 S. D. 154, 52 N. W. 854, "Town supervisors are agents of the town, and possess only such powers as are expressly conferred upon them by statute, or as are necessary to enable them to perform the duties imposed by law."   This court further held

16 S. D.—9

in Van Antwerp v. Dell Rapids Tp., 5 S. D. 447, 59 N. W. 209, that contracts made by supervisors beyond their powers could not be enforced against the town. Section 715, Comp. Laws, defines specifically the powers that may be exercised by the electors at their town meeting, and by subdivision 8 of the section it is provided that the electors shall have power "to vote to raise such sums of money for the repair and construction of roads and bridges, for the support of the poor, and for other necessary town charges, as they deem expedient." And by section 772, Comp. Laws, it is provided: "The supervisors shall have charge of such affairs of the town as are not by law committed to other town officers; and they shall have power to draw orders on the town treasurer for the disbursement of such sums as may be necessary for the purpose of defraying the incidental expenses of the town, and for all moneys raised by the town to be disbursed for any other purpose." It will be observed by the provisions of this section that the supervisors shall have power to draw the orders for all moneys raised by the town to be disbursed, and such sums as may be necessary for defraying the incidental expenses of the town. The power of the board, therefore, seems to be limited to disbursing the moneys provided to be disbursed by the electors at their annual meeting, and for defraying the incidental expenses of the town. The term "incidental expenses" cannot, in our opinion, be extended to include road machines, the purchase of which has not been authorized by the electors. While the term "incidental" has no clearly defined meaning, it cannot be extended beyond expenses necessarily incident to the ordinary conduct of the town business, and certainly not to expenditures not provided for by taxation, and which would result in imposing a

debt upon the town.    Where such an expenditure is deemed necessary the supervisors should call a special meeting of the electors and submit the same to them.    Whenever a debt is contemplated by the lawmaking power it is provided that the same shall only be incurred by the board upon a two-thirds vote of the electors at a meeting of the same called for that purpose.

By section 829, Comp. Laws, it is provided: "No town has power to contract debts or make expenditures for any one year in a larger sum than the amount of taxes assessed for such year, without having been authorized by a majority of the voters of such township, and no town shall assess for township purposes more than ten mills on the dollar of taxable property for any one year."    And by section 830, Comp. Laws, it is provided that the board of supervisors are authorized to issue bonds or orders of their respective towns in such amounts and at such periods as they may be directed by a two-thirds vote of the electors present and voting at a legally called meeting held for that purpose.    The power conferred by this section clearly excludes any authority on the part of the board to issue warrants, orders, or notes payable in the future unless so authorized by the electors in the manner provided.    The orders, therefore, executed by the two supervisors, were clearly without authority, and void.

The claim of the respondent that, conceding that the board of supervisors had no power or authority to order the machine or to execute the orders or notes in controversy, their acts were ratified by the electors at their annual meeting in March, 1900, cannot be sustained.    The proceedings as to the purported ratification cannot be held as binding upon the town, for the reason that they were had under a mistake of fact, and simply for the purpose of effecting a compromise.    There is nothing in the action of the electors at the meeting in March,

1900, indicating that they directly or indirectly intended to ratify the action of the supervisors in ordering this machine and in executing the notes or orders in controversy. But it clearly appears from the action of the electors at that meeting that they were willing to pay the sum of $165 as a compromise, and to avoid further litigation.

In the view we have taken of this case we have not deemed it necessary to take up the assignment of errors or the questions discussed by counsel in the order in which they were presented, for the reason that we are of the opinion that the learned circuit court, in the trial of this case, proceeded upon an erroneous theory, in that it seemed to have taken the view that the board of supervisors, in ordering the machine and in executing the notes, were acting within the scope of their power, and could by their acts bind the town. This court, however, takes an entirely different view of the powers of the board of supervisors, and we are not inclined to extend their powers beyond the strict letter of the law; and parties dealing with these supervisors must see to it that they are acting within the scope of the powers conferred upon them. As bearing upon the questions discussed, see the following authorities: Austin Mfg. Co. v. Smithfield Tp., 21 Ind. App. 609, 52 N. E. 1011; Wells v. Grubb, 58 Iowa, 384, 10 N. W. 799; Daly v. San Francisco, 72 Cal. 154, 13 Pac. 321; Salt Creek Tp. v. King Iron Bridge & Mfg. Co., 51 Kan. 520, 33 Pac. 303; Goodnow v. Commissioners, 11 Minn. 31 (Gil. 12); School Dist. v. Thompson. 5 Minn. 280 (Gil. 221); Dively v. City of Cedar Falls, 21 Iowa, 565; State v. Minnesota Transfer Ry. Co., 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656.

The judgment of the circuit court is reversed and a new trial granted.