# MINNEAPOLIS, ST. PAUL, ROCHESTER & DUBUQUE ELECTRIC TRACTION COMPANY v. CITY OF MINNEAPOLIS.[1]

January 23, 1914.

Nos. 18,264—(155).

**Bridge — contract between city and railway company ultra vires.**

    1. The city of Minneapolis has no power to enter into a contract with a company operating a commercial railway, by which the city agrees to bear part of the expense of strengthening a city bridge which the railway company desires to cross with its cars, where the bridge is already of sufficient strength and construction to accommodate general travel, and the sole purpose of the improvement is to permit the operation of such railway cars thereover.

**Void contract.**

    2. Plaintiff desired to cross this bridge in order to meet the line of the Minneapolis Street Railway Co. The city, in lieu of permitting the plaintiff to cross the bridge, directed the City Railway Co. to extend its line across the bridge to plaintiff's terminus. The public also has used the bridge for general travel. These facts impose no liability upon the city, since the contract was beyond the corporate power of the city and was not susceptible of ratification, but was wholly void.

    Action in the district court for Hennepin county to recover $2,500. The facts are stated in the opinion. Defendant's demurrer to the complaint was overruled, Hale, J. The defendant then answered and the case was tried before Jelley, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. Defendant's motion for judgment in its favor or for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

[1] Reported in 145 N. W. 609.

---

Note.—On the question of the liability of a municipality or other public corporation on ultra vires contract, generally, see note in 27 L.R.A.(N.S.) 1124.

*Daniel Fish,* for appellant.

*M. H. Boutelle* and *A. M. Higgins,* for respondent.

HALLAM, J.

Plaintiff operates an ordinary commercial electric railway and is engaged in carrying passengers and freight between Minneapolis and various points south. In 1907 its Minneapolis terminus was at Nicollet avenue and Fifty-fourth street at the southerly limits of the city. The street cars of the Minneapolis Street Railway Co. ran upon Nicollet avenue to Fiftieth street. Plaintiff desired to extend its line on Nicollet avenue to Fiftieth street to connect with the street car line. Between Fifty-second and Fifty-fourth streets, Nicollet avenue crosses Minnehaha creek, over which the city some years ago constructed a public foot and wagon bridge. This bridge was not strong enough to permit the operation of either plaintiff's cars, or street cars, but the complaint alleges and the court finds that it was "of sufficient construction and strength to accommodate ordinary foot and wagon traffic * * * and * * * required * * * neither strengthening nor reconstruction for any other purpose than that of permitting the laying of tracks and the operation of cars." About December 1, 1907, plaintiff applied to the city council of Minneapolis for an appropriation of $10,000 for reconstructing and strengthening said bridge, "the sole and only object" being "to permit of the operation of the cars of the plaintiff thereover." On January 10, 1908, the city council passed a resolution directing the city engineer to hire men and purchase material to strengthen the bridge, at a cost not to exceed $2,500. About March 15, 1910, the city engineer entered into a contract with plaintiff by which it was agreed that plaintiff should reconstruct the bridge with steel construction, at a cost of approximately $9,000, and that the city should pay plaintiff the sum of $2,500. Thereupon plaintiff reconstructed the bridge. Ever since its completion the bridge has been used as a public thoroughfare. At the times mentioned plaintiff had received no permission from the city to occupy Nicollet avenue. After completion of the bridge no such permission was granted to plaintiff, but "in lieu thereof" the city ordered the Minneapolis

Street Railway Co. to extend its tracks from Fiftieth street across the bridge to Fifty-fourth street, to a point of connection with plaintiff's line.

This is not the case of an improvement needed for the double purpose of railroad use and general public travel. The question in the case is this: Has the city council of Minneapolis the power to appropriate money to aid in reconstructing a bridge upon a street of the city where the existing bridge is sufficient for all purposes of general travel, and where the sole purpose of the improvement is to permit the laying of tracks and the running of cars of an ordinary commercial railway? We hold that the city council has no such power.

Plaintiff is in no sense a street railway. It carries no passengers from street to street within the city, but, with the city as a terminus, it operates from place to place, stopping and gathering business only at terminal or regular way stations. It is not an aid to travel upon a street. If it occupies a street it is an impediment only to street travel. State v. Duluth Gas & Water Co. 76 Minn. 96, 107, 78 N. W. 1032. It differs in no essential principle from the ordinary steam railway of commerce. The fact that its motive power is electricity instead of steam is of no consequence.

A commercial railway has no right to construct its tracks along city streets without the consent of the city. G. S. 1913, § 6136. It cannot acquire such right even under the power of eminent domain. Duluth Terminal Ry. Co. v. City of Duluth, 113 Minn. 459, 130 N. W. 18. The duties and obligations of a commercial railway company, when it is permitted to occupy a public street with its tracks, are well defined. It must fully restore the street to as serviceable a condition for public travel as existed before its tracks were laid. 2 Elliott, Roads & Streets, § 1056; 3 Elliott, Railroads, § 1105; State v. St. Paul, M. & M. Ry. Co. 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313; People v. Chicago & A. R. Co. 67 Ill. 118; State v. Lake Koen N. R. & I. Co. 63 Kan. 394, 65 Pac. 681; Indianapolis & C. R. Co. v. State, 37 Ind. 489; Chicago & E. R. Co. v. Luddington, 175 Ind. 35, 91 N. E. 939, 93 N. E. 273; State v. Hannibal & St. J. R. Co. 86 Mo. 13. If such restoration requires the construction of a bridge over its tracks, it is the uncompensated

124 M.—23.

duty of the railroad company to construct such bridge. 1 Elliott, Roads & Streets, § 48; Cincinnati, I. & W. Ry. Co. v. City of Connersville, 218 U. S. 336, 31 Sup. Ct. 93, 54 L. ed. 1060, 20 Ann. Cas. 1206; Maltby v. Chicago & W. M. Ry. Co. 52 Mich. 108, 17 N. W. 717; State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656; Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, Ann. Cas. 1912D, 1029. And to maintain it. State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656. If the demands of traffic require that the bridge be later enlarged, the railroad company must bear the burden of enlarging it. Chicago, B. & Q. Ry. Co. v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. ed. 598, 4 Ann. Cas. 1175; State v. Lake E. & W. Ry. Co. (C. C.) 83 Fed. 284. If the necessities of public travel require the opening of a street through its right of way, it must in like manner bridge the street so opened if public safety demands it. Cincinnati, I. & W. Ry. Co. v. City of Connersville, 218 U. S. 336, 31 Sup. Ct. 93, 54 L. ed. 1060, 20 Ann. Cas. 1206; Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, Ann. Cas. 1912D, 1029. These are common-law duties. If the railroad company fails in the discharge of any of these duties, the city may perform them and recover the expense. Chicago v. Pittsburg, C. C. & St. L. R. Co., 146 Ill. App. 403. "This duty is founded upon the equitable principle that it was their act, done in pursuit of their own advantage, which rendered this work necessary, and therefore they, and not the public, should be burdened with its expense." State v. St. Paul, M. & M. Ry. Co. 35 Minn. 131, 133, 28 N. W. 3, 5, 59 Am. Rep. 313.

The city has no power, in the absence of legislative authority, to appropriate money in aid of railroad building. 2 Elliott, Railroads, § 827; Board of Commrs. of Delaware County v. McClintock, 51 Ind. 325; Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. ed. 77; Norton v. Dyersburg, 127 U. S. 160, 8 Sup. Ct. 1111, 32 L. ed. 85; Young v. Clarendon Township, 132 U. S. 340, 10 Sup. Ct. 107, 33 L. ed. 356; Lewis v. Pima County, 155 U. S. 54, 15 Sup. Ct. 22, 39 L. ed. 67. And the city has no power to aid a railroad company in the performance of the duties and obligations which

the construction and maintenance of its road imposes.   A contract by the city to do so is both *ultra vires* and without consideration. The rights here concerned are rights of the public which the officers of the city cannot barter away.   Snow v. Deerfield Township; 78 Pa. St. 181; City of Newton v. Chicago, R. I. & P. Ry. Co. 66 Iowa, 422, 23 N. W. 905.   A contract by which a municipality undertakes to assume an obligation properly resting on the railroad company, to restore a road or street (Snow v. Deerfield Township, 78 Pa. St. 181), to build a bridge (State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 403, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047), or to maintain a bridge (State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L.R.A. 656), is wholly beyond the power of the city, and it is void.

It was the uncompensated duty of this plaintiff to build at its own expense such bridge as the operation of its road required.   The fact that it became desirable to reconstruct one of the city's bridges into a railroad bridge did not relieve plaintiff of the burden of making such construction as was necessary for its purposes, nor did these facts permit the city to come to its aid, so long as the improvement was in no measure needed for the purposes of general public travel.

There is no statutory authority for such a contract as was here made.   The contract was beyond the power of the city council and the city engineer, and was void.

2. The fact that the city did not in fact give plaintiff permission to pass over this bridge to meet the city railway line, but "in lieu thereof" accomplished the same purpose by directing the city railway to extend its line across the bridge to meet the line of plaintiff, does not change the situation and does not impose any obligation upon the city in favor of plaintiff which did not exist before these facts occurred.   Nor does the fact that the public has used the reconstructed bridge give rise to any liability on the part of the city. The contract was invalid because it was beyond the corporate power of the city to make it.   Such a contract is not susceptible of ratification, is wholly void, and any one dealing with the city on the basis of it can have no relief in law or in equity.   Bazille v. Board of Co. Commrs. of Ramsey County; 71 Minn. 198, 73 N. W. 845; Bell v.

Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 Am. St. 621; Jackson v. Board of Education of City of Minneapolis, 112 Minn. 167, 127 N. W. 569; First National Bank of Goodhue v. Village of Goodhue, 120 Minn. 362, 363, 139 N. W. 599, 43 L.R.A.(N.S.) 84.

Judgment reversed.

On February 27, 1914, the following opinion was filed:

PER CURIAM.

We have examined with care the exhaustive brief presented by plaintiff on motion for reargument. The matters there presented were quite fully considered by the court before reaching the decision.

The controlling fact in the case is, that the rebuilding of this bridge was not required by any public necessity, or for any use or purpose except the prospect of accommodating cars of plaintiff.

The decisive principle of law in the case is, that the city authorities had no power to contract to rebuild a street bridge when such improvement was needed solely for the purpose of enabling a commercial railway to use it for railway purposes.

Counsel urges that there was no private purpose involved, since the plaintiff was never permitted to extend its tracks across the bridge, but that a public purpose was served by reason of its use for public travel and the operation of street cars over it.

The fact that plaintiff did not use the bridge after it was reconstructed could not make its reconstruction a public necessity, nor transform a contract which could serve only a private use into one for a public use.

The fact that the public did use the bridge did not give rise to any obligation. Its use could not be avoided. There was no option to reject it. Young v. Board of Education, 54 Minn. 385, 55 N. W. 1112. The case is distinguishable from Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644.

The fact that the old bridge was not strong enough for operation of street cars, and that the new bridge was later used for the operation of street cars, is not, under the circumstances, of controlling import-

ance. The right of the city to build bridges so that street cars may provide increased facilities for street traffic, is not involved. The fact is that, though the plaintiff was not permitted to cross the bridge for the purpose desired, that is, to reach the street car terminal, the same result was accomplished with the same benefit to plaintiff by the extension of the street-car line across the bridge to plaintiff's terminal. The record shows that the extension of the street-car line was "in lieu of" the extension of plaintiff's line across the bridge. There is no basis for an inference that the determination to expend $2,500 to rebuild this bridge had at any time any relation to the handling of street traffic in the outlying district.

As indicated in the opinion, the question of the power of the city in case of an improvement needed for the double purpose of railroad use and general public travel, is not involved.

Motion for reargument denied.