SPITZER et al. v. BOARD OF TRUSTEES FOR REGINA PUBLIC SCHOOL DIST. NO. 4 OF SASKATCHEWAN.*

(Circuit Court of Appeals, Sixth Circuit. July 19, 1920.)

No. 3397.

1. Schools and school districts ☞97(5)—Purchaser of bonds bound to know statute.

One making an offer for bonds to be issued by a school district, in response to a public advertisement, is bound to know the law under which the bonds are to be issued, and cannot avoid the resulting contract on the ground that he was misled by statements made by the district officers, which were literally true and readily understandable by one having knowledge of the statute.

2. Schools and school districts ☞97(5)—Contract for purchase of bonds not invalid for mutual mistake of law.

A contract for purchase of school district bonds *held* not invalid for mutual mistake, because neither of the parties had actual knowledge of court decisions affecting the property which was subject to taxation for payment of the bonds.

3. Schools and school districts ☞97(5)—Acts of purchaser evidence of approval of bond issue.

A contract for purchase of bonds of a school district, subject to approval of the proceedings leading to their issuance by purchaser's attorneys, cannot be avoided on the ground that such approval was not given, where after examination by the attorneys of a transcript of the proceedings, and asking for and obtaining the passage of an additional resolution by the district board, the purchasers, without further objection, caused the bonds to be prepared and printed at their expense, and obtained the issuance and delivery of a substantial part of the same, which they advertised and sold.

4. Schools and school districts ☞97(5)—Grounds for refusal to perform contract for purchase of bonds cannot be shifted after suit.

Where defendants, who had contracted for the purchase of $500,000 of bonds of plaintiff school district, after accepting and paying for $100,000 of bonds and after plaintiff had entered into contracts for property and buildings to be paid for from the proceeds, refused to take more, except at a reduced price, on the ground that not all the property within the district was subject to taxation for their payment, as they had supposed, defendants cannot justify such refusal, when sued for breach of contract, on other grounds, which, if made known at the time, might have been obviated.

5. Words and phrases—"Law"; "knowledge of law."

"Knowledge of law" includes knowledge of the decisions of the courts, which are part of the law."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series; Knowledge of the Law; Law.]

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. ——, 41 Sup. Ct. 149, 65 L. Ed. ——.

Action by the Board of Trustees for the Regina Public School District No. 4 of Saskatchewan against Adelbert L. Spitzer and others, doing business as Spitzer, Rorick & Co. Judgment for plaintiff, and defendants bring error. Affirmed.

For opinion below, see 255 Fed. 136.

George D. Welles and Charles F. Chapman, both of Toledo, Ohio (Tracy, Chapman & Welles, of Toledo, Ohio, on the brief), for plaintiffs in error.

E. J. Marshall, of Toledo, Ohio (Marshall & Fraser, of Toledo, Ohio, on the brief), for defendants in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is to review a judgment in favor of the defendant in error, hereinafter called the plaintiff, against the plaintiffs in error, whom we shall call the defendants, for damages on account of defendant's refusal to receive and pay for a block of school debentures issued by plaintiff pursuant to alleged contract with defendants for their purchase. The case was tried to the court under written waiver of jury, and judgment rendered upon findings of fact. The legal conclusions based thereon are contained in a written opinion, reported in 255 Fed. 136. The substance of the case is this:

Plaintiff is a body corporate organized under the School Act of the province of Saskatchewan, Dominion of Canada, which act empowers any school district of plaintiff's class to issue, upon the security of the district, debentures running not more than 20 years and at a rate of interest not exceeding 8 per cent. per annum, for obtaining school sites and the erection and furnishing of school buildings thereon. The required preliminary steps include a declaration by the board of the advisability of such borrowing, expressed through a by-law under the corporate seal of the district and in form and effect as prescribed by the minister of education, and a notice of the board's intention to apply to the minister of education for authority to so borrow to be given to the taxpayers of the district, in a form prescribed by the minister, and to be posted in five or six conspicuous places in the district, to enable a demand—which in the instant case could be made by 20 taxpayers—for a public vote upon the by-law; if no vote is demanded, the board is to transmit to the minister of education a certified copy of the by-law, as well as of the notice to the taxpayers, with proof of its posting, together with a declaration of the assessed value of the real property in the district as shown by the last revised assessment roll, "upon receipt of which" (the act provides), "and upon being satisfied that the several conditions required by this act have been substantially complied with, the minister may in writing authorize the board of trustees to borrow the sum or sums of money mentioned in the by-law, or a less sum, and issue public notice of authorization in the Saskatchewan Gazette." The act permits the use of either of three forms of debentures, two of which provide for payment "in lawful money of Canada"; the third, in such money or "pounds sterling." The act further provides that every debenture, before its issue, shall be sent for registration to the minister of education, who, if satisfied that the

requirements of the act have been substantially complied with, is required to register and countersign the debenture, keeping proper record of the same. It is also provided that such—

"countersigning by the minister shall be conclusive evidence that the district has been legally constituted and that all the formalities in respect to such loan and the issue of such debenture have been complied with, and the legality of the issue of such debenture shall be thereby conclusively established, and its validity shall not be questionable in any court in Saskatchewan, but the same shall, to the extent of the revenues of the district issuing the same, be a good and indefeasible security in the hands of any bona fide holder thereof."

On February 14, 1913, plaintiff regularly passed, adopted and sealed what is known as "by-law No. 16," which, after reciting the necessity and desirability of borrowing $500,000 on the security of the district for the purpose of building, furnishing, and equipping a new school on each of two named locations, as well as purchasing sites, improving grounds, and making other improvements, including a heating and ventilating system in a third school; and that the sum so borrowed should be repayable to the bearer at the end of 20 years, with interest at the rate of not more than 8 per cent. per annum, enacted (a) that the necessary proceedings be taken under the school act to obtain the sanction of the minister of education to the loan, and (b) that, if the minister should empower the board to borrow the sum mentioned under the act, the debentures of the district (to be issued and executed by the chairman and treasurer of the board) be issued payable to bearer at the time and with not more than the interest above stated. Due notice of this by-law and its purpose was given the public. No poll was demanded, and the board duly transmitted to the minister of education certified copy of the by-law and notice, with proof of posting and declaration of assessed value of real property, whereupon the minister in writing authorized the board to borrow the sum stated, publication of which was duly made in the official gazette. Plaintiff thereupon advertised for tenders.

On April 12, 1913, defendants, who are dealers in bonds at Toledo, Ohio, submitted to plaintiff, in writing, an offer of $475,000 for $500,-000 of 5 per cent. debentures of the district, maturing in 20 years, principal and interest payable in lawful money of the United States at the Bank of Montreal, in either New York or Toronto, Canada, at holder's option. The offer contained this further provision:

"We will print and deliver to you at Regina at our expense lithographed blank debentures ready for execution. Prior to our taking up and paying for said debentures, you are to furnish us complete transcripts of all proceedings leading up to and culminating in the issuance of said debentures evidencing their legality to the satisfaction of our attorney. Should our attorneys deem an additional by-law necessary, you are to pass the same."

On April 16, 1913, at a duly called meeting of the board, defendant's tender was formally accepted by resolution, which, however, was not under seal. This was plaintiff's only acceptance through resolution or writing. At the request and instigation of defendants' agent, who also represented them in making the original tender, the board passed, apparently on the same 16th day of April, a new by-law, numbered 17, prepared by or under the suggestion of this agent, which by-

law differed from No. 16 only in that the interest (not to exceed 8 per cent.) was expressly made payable semiannually, and both principal and interest made payable in lawful money of the United States, and at the places and with the option stated in defendant's tender.[1] No public notice of this by-law No. 17 was given, but a copy of it was sent by plaintiff to the minister of education, who on April 17th, in writing, acknowledged its receipt and advised plaintiff of his approval. Later a transcript of all plaintiff's proceedings and of the acts of the minister of education already mentioned was sent to defendants at Toledo, who, in acknowledging receipt, said:

"We will turn same over to our attorneys, and promptly advise you as to the result of their examination."

Defendants asked plaintiff for no further or other legislation, nor for further or other transcripts of plaintiff's proceedings, nor did they request further or other proceedings by the minister. The records and transcripts so submitted by plaintiff to defendants were by the latter turned over for purposes of approval to their counsel, who thereafter prepared blank forms of debentures, which defendants on May 21, 1913, sent plaintiff for execution, with detailed instructions (apparently prepared by defendants' counsel) as to the formalities thereof. The debentures were accordingly executed by plaintiff and countersigned by the minister of education. The debentures so prepared and executed differed from the terms contained in defendants' written tender of April 12th only in that they were made payable in lawful money of Canada, instead of lawful money of the United States.

On July 5, 1913, defendants requested plaintiff to forward immediately $100,000 of the debentures to New York for delivery. On July 8th (three days later) defendants first suggested a possible criticism upon the debentures growing out of this situation: The school act of Saskatchewan provided for two kinds of school districts, viz. "public," to which class plaintiff belongs, and "separate," which latter may be established by a minority of the taxpayers in the district, whether Protestant or Roman Catholic, and which, when established, are governed by the same laws as are public schools. Regina also had a "separate" school district. The suggestion of July 8th above mentioned was by way of telegram from defendants to plaintiff, inquiring whether lands liable to assessment for indebtedness on debentures when issued remained liable therefor until the whole of the indebtedness has been paid, or whether it would be released from liability for such indebtedness if thereafter transferred from the present owners to Catholics. To this plaintiff made reply, so far as presently material, that the question raised had not been dealt with "by our courts here"; that the lands were "believed to remain liable," but that the case was "extremely hypothetical," inasmuch as the assessments of the public school district had for the past 10 years been ten times that of the separate district. It appears from defendants' reply of July 22d that they had previously been advised by their Canadian counsel that lands

[1] In the recital of necessity, etc., in the preamble to by-law 16, the interest was given at 8 per cent. per annum, payable annually. The words "payable annually" were omitted from the enacting portion.

liable to assessment on account of debentures when issued would remain so liable until the entire thereof was paid, but that on the question being raised by a prospective purchaser of part of the $100,000 block in question defendants' counsel had reached the opposite conclusion.

Defendants' offer to take up the $100,000 of debentures then in New York, without waiving their rights under the contract and without approving the entire issue, was accepted, and the bonds to the extent stated taken and paid for by defendants at the contract rate of 95 cents on the dollar. On August 15th following defendants declined to approve the remaining $400,000 of debentures solely for the reason stated in their letter of July 22d before referred to. Plaintiff thereupon sold the remaining $400,000 of debentures at 90 cents on the dollar. This suit is to recover the 5 per cent. below the price at which defendants were to take them.

The defenses presented below, so far as relied upon here, are: (1) That defendants had the right to rescind for the asserted reason that defendants were induced to make the contract of purchase by representations on plaintiff's part that the area of the plaintiff district was coextensive with the area of the city of Regina, and that such representations were untrue, in that real estate owned by persons of the Roman Catholic faith, aggregating from 10 to 15 per cent. of the entire area of the city, was not included in plaintiff's district by reason of which fact the debentures were worth less than 95 cents on the dollar; (2) that defendants' attorneys did not in fact approve the debentures, and that defendants were thereby relieved from liability under the contract of purchase; (3) that the contract of purchase and sale was void, because plaintiff's resolution accepting defendants' tender was not under seal; (4) that the contract was void, because contemplating that the debentures should be payable in lawful money of the United States, which it is asserted was beyond the power of plaintiff board; (5) that by-law No. 17 was invalid, in that no notice for a poll was published.

[1] 1. Was defendant's contract of purchase induced by false representations on plaintiff's part that the Regina public school district included all the lands within the city of Regina? The trial judge, on careful consideration of the evidence, found as a fact that the alleged misrepresentations were not made, and this conclusion we are bound to accept, if supported by substantial evidence. We think the finding is so supported. The claim of misrepresentation is based upon alleged statements by the plaintiff board that the limits of the district were those of the city, and that all of the lands within the district were subject to taxation for school purposes. We think the trial judge justified in concluding that such statements as were made by the board members, when interpreted in the light of the law relating to public and separate school districts, were literally true; that in a very proper sense the district had the same limits as the city, notwithstanding the law contemplated the existence of two separate districts having the same outside limits; and that if there was any misunderstanding between defendants and the board—

"it was due to the fact that the school officers spoke with a knowledge of the law of the province on these matters and [defendants' agent] was in actual, probably, but certainly not in legal, ignorance thereof."

We agree with the trial judge that—

"The school officers had the right to assume that one there for the purpose of buying debentures understood the laws pertaining to such obligations."

Defendants' tender was in legal contemplation made with knowledge of the applicable law of the province. Under well-settled law, they were bound at their peril to inquire into the power of the plaintiff school district to make the contract in question. State v. Minnesota Transfer Railway Co., 80 Minn. 108, 116, 117, 83 N. W. 32, 50 L. R. A. 656.

It is true that under a heading "Information re District," in a statement prepared by the secretary of the plaintiff board, occur the words, "Area, 7,850 acres; same as city of Regina;" but the statement clearly showed that the "net assessment" of the city was $54,966,142, while the assessed valuation of the property in plaintiff's school district liable to assessment was $50,711,054. We think the trial judge rightly found that this statement, read in the light of the applicable statutes of the province, was susceptible of but one reasonable construction, viz. that the assessed valuation of the public school district was the amount last stated above, and that the "net assessment" above the assessed valuation of the school district, viz. $4,255,088, was the valuation of the "separate" school district. Clearly the information disclosed by this statement reasonably put defendant upon inquiry, and there is nothing to indicate that such inquiry would not have disclosed the actual situation to be as just stated.

[2, 5] We see no merit in the contention that there was mutual mistake of fact on the part both of plaintiff district (as distinguished from misrepresentation of fact by the former) and of defendants, in that neither knew that the courts of the province had already authoritatively held (as was the case) that lands included for taxation purposes within a public school district would cease to be so liable when passed into the ownership of a taxpayer of the Catholic faith. This was merely a mistake of law. Knowledge of the law includes knowledge of the decisions of the courts, which are part of the law. Of course, defendants do not contend that a mere mistake of law would justify rescission.

In fact, defendants' refusal to take the remaining $400,000 of debentures was not based on any asserted misrepresentation of fact, but only upon the existence of a state of law on account of which defendants assumed they had the right to decline to approve the debentures. The conclusion of the trial judge that no misrepresentations of fact were made by plaintiff is sustained.

[3] 2. Did defendants' counsel approve the legality of the debentures? The trial judge answered this question in the affirmative, and we think this conclusion is supported by substantial evidence. It was the legality of the debentures, not their market value, which was subject to the approval of defendants' attorneys; and while

defendants did not in terms advise plaintiff that their attorneys had declared the issue of debentures legal, defendants' conduct tended most cogently to show such actual approval. As already stated, by-law No. 17 was passed at the instance of defendants' counsel. No request was ever made for any further or other legislation by plaintiff, or for further records or transcripts; the debentures themselves were prepared by defendants' Canadian counsel, and were forwarded by defendants to plaintiff with explicit instructions as to the details of execution, citing the opinion of Canadian counsel as to one feature thereof. Defendants not only paid for the original printing of the entire $500,000 of debentures, furnishing the money to pay the Canadian customs tax, but had the entire issue reprinted, so as to include in the name of the district the word "public," which had been omitted from the previous draft; they proceeded to advertise the issue for sale, caused the actual execution of $100,000 of the bonds by plaintiff board, their countersigning by the minister of education, and their forwarding to New York for actual delivery to defendants, negotiated a sale of one-half of that installment, and directed that other blocks of debentures be forwarded at stated periods; and the debentures themselves, as well as the coupons, were in terms made to conform completely to the requirements of the provincial statute.

Surely these facts substantially tend to show actual approval of the legality of the issue by defendants and their counsel (with whom defendants seem to have been in frequent consultation), if, indeed, any other conclusion is reasonably permissible. It would be difficult, if not impossible, to reconcile defendants' course of dealing in this respect with anything short of an actual approval of the legality of the issue. Words of express approval were not essential; necessary implication was enough. Words could not speak more plainly than did these actions. Whether the ultimate approval was by Canadian or American counsel is not important. Moreover, the only dissatisfaction with the issue expressed by defendants before suit was begun was its lessened market value on account of the provision of the Canadian school law before mentioned. The trial judge's finding of actual approval of the legality of the debentures must be sustained.

[4] 3. The remaining objections to the validity of the contract of purchase may be considered together. The trial judge was of opinion that the common law of England, which is applicable to the instant case, did not require that the resolution of the plaintiff corporation, entered upon its record, should be attested by the corporate seal; that, while it was beyond the power of the board to contract for repayment of the loan in money of the United States, such agreement did not make the contract of purchase invalid, and this for a number of reasons stated in the court's opinion; also that by-law No. 17 was, in view of all the other action had, mere surplusage.

The ultimate conclusion of defendants' liability was, however, rested largely upon the doctrine of Railroad Co. v. McCarthy, 96 U. S. 267, 24 L. Ed. 693, viz. that neither of the defenses referred to was asserted at the time the contract was repudiated, nor until the filing of answer in the instant suit more than a year later. Apart from the doc-

trine of the McCarthy Case, we recognize much force in the conclusions of the trial judge. Were it necessary to a decision of the case, we should probably reach the same conclusion as to the lack of necessity that the plaintiff's resolution of acceptance be under seal. The objection that the debentures were to have been payable in United States currency is at the best highly technical, as distinguished from meritorius, for the reason that the stipulation for such payment was without authority of law and was brought about by defendants. The provision for payment contained in the debentures conformed precisely to the Canadian statute, and the change in this detail in the interest of the validity of the bonds was made, to say the least, with defendants' entire approval. It is also to be said that, although the debentures recited that they were issued under the authority of both by-laws 16 and 17, yet the latter (apart from the specification of repayment in United States currency), so far as it differed from the former, related only to details which would seem fairly within the discretion vested in the plaintiff board, and which indeed must have been recognized by the minister of education as a substantial compliance with the statute. But in the view we take of the case it is unnecessary to decide these technical questions, for we think it clear that defendants are effectually estopped to assert these defenses through their failure to seasonably present them. As said in Railroad Co. v. McCarthy, supra:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

If, as is contended, and as we assume, the stated doctrine of the McCarthy Case is qualified by the requirement that the party urging the estoppel must have been prejudiced by the failure to seasonably assert the defense subsequently made,[2] its principle clearly applies here. As already said, the defenses we are now considering were purely technical; defendants had the power under their contract to call for such further action as was necessary to the effectiveness of the securities. Unquestionably the plaintiff corporation had the power to remedy these defects, and under its contract it was obligated to do so, and had at least the equitable right to be so permitted. Presumably it would have been entirely willing to take such action, had request been made; but no such request was made. On the contrary, without a suggestion of invalidity otherwise in the debentures, their repudiation was based solely upon the state of the "separate" school law before referred to. Defendants' conduct necessarily prejudiced plaintiff board. On the strength of defendants' contract of purchase, expenses and liability had been incurred in commencing the improvements. Defendants' offer to take and pay for the $100,000 of debentures already issued in terms recognized that plaintiff was being seriously embarrassed by defendants' abandonment of

[2] Life Ins. Co. v. Drake (C. C. A. 8) 214 Fed. 536, 547–548, 131 C. C. A. 82; Galle v. Hamburg, etc. (C. C. A. 2) 233 Fed. 424, 425–426, 147 C. C. A. 360.

their agreement. Plaintiff was naturally obliged to sell the remainder of the issue on the best terms it could get, hampered by the delay and urgency of the situation.

The application of the doctrine of the McCarthy Case is clearly in the interest of justice. As found by the minister of education, the debentures substantially complied with the Canadian law. By virtue of their approval by that officer, and under the express provision of the statute, the debentures themselves were enforceable and marketable, and these qualities were in substance what the defendants contracted for. Defendants seem not to have regarded them as illegal, as shown by their acceptance to the extent of $100,000, and their willingness to take the entire issue at a reduction based upon the existence of the separate school district law—a law whose existence, we have already seen, defendants were bound to recognize. This is not a suit upon the bonds, but upon defendants' contract of purchase.

We think these conclusions not in conflict with Davis v. Wakelee, 156 U. S. 680, 690, et seq., 15 Sup. Ct. 555, 39 L. Ed. 578, nor with decisions of this court in Taenzer v. Railway Co., 191 Fed. 543, 551, 552, 112 C. C. A. 153, and Oakland Co. v. Wolf, 118 Fed. 239, 247, 248, 55 C. C. A. 93. We may add that in view of the history of this case, and without regard to what might otherwise be the situation, we think it not now open to defendants successfully to contend that, because of the provision of the school law which requires all valid action by the board to be adopted at a regular meeting, plaintiff has not become liable on the original contract of purchase and sale, and that defendants may, because of such lack of mutuality of obligation, escape the estoppel otherwise operating against them.

4. It results, from the conclusions we have reached, that there is no force in the proposition urged on oral argument that plaintiff's petition is insufficient to support a recovery. The petition was not demurred to, and the point in question does not seem to have been raised until after the close of the trial. Moreover, in view of the facts which appeared upon the trial, it would have been not only the right, but the duty, of the court to have permitted amendment, if necessary, to meet the proofs. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 577, 578, 95 C. C. A. 70. But we think no necessity for such amendment existed.

5. Before suit was begun, defendants offered plaintiff 92 cents on the dollar for the remaining $400,000 of debentures, on the proposition that their market value was a few cents less on account of the Canadian law referred to. It is perhaps not clear from the correspondence whether this offer was absolute, or whether it was conditioned on defendants' discharge from their contract obligations. If so conditioned, the measure of plaintiff's damage was not thereby affected. The amount of the award would indicate that the trial judge regarded the offer as conditional. No error is assigned upon this feature of the case, nor is it argued in defendants' brief. We accordingly disregard it.

A discussion in detail of the numerous propositions presented by brief and oral argument would unduly extend this opinion. We have,

however, considered them all, with the result that we find no error in the proceedings below, and the judgment of the District Court is accordingly affirmed.